UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

CIVIL MINUTES – GENERAL

Case No. SA CV 13-0896-DOC(JPRx)                     Date: January 13, 2014

Title: HERBERT I. HANSON -V- RAYTHEON COMPANY

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING IN PART AND DENYING IN PART MOTION TO PARTIALLY DISMISS [13]**

Before the Court is Defendant Raytheon's Motion to Partially Dismiss and Strike the First Amended Complaint ("Motion") (Dkt. 13). The Court finds this matter appropriate for decision without oral argument. *See* Fed R. Civ. P. 8; L.R. 7-15. After reviewing the moving, opposing, and replying papers, the Court GRANTS IN PART and DENIES IN PART the Motion.

I.   Background

The Court draws the following facts from the First Amended Complaint ("FAC") (Dkt. 10).

Plaintiff Herbert Hanson ("Hanson") worked for Defendant Raytheon Company ("Raytheon") for about three years as an engineer. FAC ¶ 5. Hanson's experience at Raytheon started well, but he began to notice hostility in late 2008. Hanson alleges a range of adverse employment actions and negative experiences following this change,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0896 (JPRx)                      Date: January 13, 2014
                                                                                  Page 2

including demotions, transfers, Performance Improvement Plans, racial slurs, and unfair treatment. Hanson was terminated in January 2012. Hanson filed this lawsuit in June 2013 alleging violations of federal and state law. *See* Complaint (Dkt. 1). For purposes of the Motion to Dismiss, much of the FAC is irrelevant. There are three alleged incidents, however that are particularly germane.

       First, in December 2009, a superior assigned Hanson to join a proposal bid that used "assumed" numbers to calculate the proposal. FAC ¶ 17. Hanson thought these bid numbers were improper and should not be used, and told his superior that "he could not justify the made-up bid numbers." *Id*. Hanson's superior became agitated and called Hanson in for a meeting with Human Resources. *Id*. After a hostile HR meeting with his supervisor, Hanson wrote a letter to HR explaining the incident. *Id*. ¶¶ 20-22. Hanson did not receive a response. *Id*. ¶ 22.

       Second, in 2011, Hanson was instructed to continue charging his time to a specific project even though his work on the project did not justify charging full-time hours to the project. *Id*. ¶¶ 62-63. Hanson complained about this, and asked management for different charge numbers or work that would be justified. *Id*. ¶ 63. Management denied this request and told Hanson to continue billing to the same project regardless. *Id*. Hanson alleges similar instances in January 2012, but there is no allegation in the Complaint that Hanson objected or complained to a superior about that incident. *Id*. ¶ 64.

       Third, the FAC describes difficulty at Hanson's departure surrounding paid time off ("PTO"). Hanson claims Raytheon repeatedly required its employees to use their PTO time to do any work that could not be charged to a government project account. FAC ¶¶ 69-70. Hanson also vaguely alleges that Raytheon falsely claimed he owed the company money after his termination. FAC ¶¶ 68-73.

   II. Legal Standard

       Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0896 (JPRx)                                                                                       Date: January 13, 2014
                                                                                                                                    Page 3

at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, this court accepts as true a plaintiff's well-pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

     In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).

     Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

   III. Discussion

       a. Claim Four: Retaliation in Violation of the False Claims Act

         i. Legal Standard

     Raytheon argues that the Court should dismiss Claim Four (violation of the False Claims Act's ("FCA") antiretaliation provision, 31 U.S.C. § 3730(h)). "A plaintiff alleging a FCA retaliation claim must show three elements: (1) that he or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in protected activity." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0896 (JPRx)                      Date: January 13, 2014
                                                                                              Page 4

---

An employee can show that he or she engaged in activity protected under the FCA by "investigating matters which are calculated, or reasonably could lead, to a viable FCA action." *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996). "[A]n employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Moore v. California Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002). Thus, an employee cannot make out a case if her actions are designed only to generate compliance with the law, but can make out a case if her actions investigate fraud by a contractor. *See id*. at 846 (holding that a material issue of fact existed where employee could reasonably have believed that employer was misleading government agency to increase payments); *Hopper*, 91 F.3d at 1269 (affirming grant of summary judgment for defendant school district where plaintiff "was not trying to recover money for the government . . . was not investigating fraud . . . [and] was not whistleblowing as envisioned in the paradigm *qui tam* FCA action").

                ii.  Discussion

The activity described in the FAC is sufficient to make out a claim under the FCA. Hanson describes being asked to use bid numbers he believed were improperly calculated to create a bid for the federal government. FAC ¶¶ 17-22. This activity could lead to an overbid resulting in a fraudulent overcharge to the federal government. Similarly, falsely overcharging hours to a project would result in overpayment by the federal government for that project. *See* FAC ¶¶ 62-64. Both of these could reasonably lead to fraud on the federal government. *See Mendiondo*, 521 F.3d at 1104 (finding a prima facie case under the FCA where plaintiff complained to hospital's CEO that doctors were treating patients in a manner that suggested attempts to overcharge Medicare).

These allegations also plead sufficient facts to show that Raytheon knew Hanson had engaged in protected activity because Hanson complained to his superiors in both instances. He told his supervisor that the bid numbers were improper and should not be used, FAC ¶ 17, and told management that his work on the assigned charge number did not justify full-time hours, FAC ¶ 63. This put Raytheon on notice that Hanson believed charging the government for this work was inaccurate or misleading – i.e., fraudulent. These facts are sufficient to plausibly allege that Raytheon was on notice. *See Mendiondo*, 521 F.3d at 1104 (holding that employee's complaining to hospital CEO "about possible 'civil and criminal violations'" sufficiently pled notice to employer).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0896 (JPRx)                                              Date: January 13, 2014
                                                                          Page 5

---

      Finally, Hanson must plead sufficient facts to support an inference that Raytheon retaliated against him because of his activity. Hanson may rely on circumstantial evidence, like proximity in time, to raise an inference that he was discriminated against because of his protected activities. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) ("Causation . . . may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."). Hanson alleges that he brought his concerns to his supervisors' attention in December 2009 and late 2011. *See* FAC ¶ 17, 62. Hanson was terminated in January 2012, but he alleges other forms of discrimination (transfers, repeated Performance Improvement Plans, and demotions) in the interim. These allegations are sufficient to raise the inference that some or all of these actions were retaliation for Hanson's protected behavior. This is particularly true given that discovery is "often necessary to uncover a trail of evidence regarding the defendants' intent in undertaking allegedly discriminatory action." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004).

      Raytheon's arguments claim that Hanson must provide detailed allegations of the basis for the possible fraud, the specific way the bids were calculated, the specific proposal that was allegedly fraudulent, whether and how that proposal was submitted, when and for how long he was told to overcharge his hours, and whether he actually transferred his hours. *See, e.g.,* Mot. at 8-10. This overstates the factual allegations necessary at this stage of the litigation. Hanson must allege facts that plausibly allege a prima facie case under the FCA; he has done so. As discussed in *Edwards*, much of this detailed information may not be available to Hanson before discovery. *See* 356 F.3d at 1061. Hanson's complaint clearly provides more detail and substance than the complaint at issue in *Mendioto*, and Raytheon cannot turn the pleadings stage into summary judgment.

      Raytheon argues that this case is identical to *Tribble* and should be dismissed, but the Court finds the *Tribble* case factually and procedurally inapposite. *See Tribble v. Raytheon Co.*, 414 F. App'x 98, 99 (9th Cir. 2011). First, the case addressed a summary judgment grant, after the close of discovery. *Id.* Second, the *Tribble* plaintiff based his FCA claim on the fact that he recommended that a product be sent for additional testing for a latent defect, but nothing was done. The Ninth Circuit held that simply alerting the employer the possibility of the defect was not enough because Tribble did not take "any additional steps to pursue the alleged latent defect" and there was no evidence that he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0896 (JPRx)                                Date: January 13, 2014
                                                                                      Page 6

believed the employer's "failure to investigate . . . constituted fraud against the U.S. government." *Id*. Hanson claims he complained to superiors at Raytheon about calculating the bid proposal, and that he raised his concerns about improper billing. *Tribble* is thus not helpful.

Raytheon also relies on *Sicilia v. Boeing Co.*, 775 F. Supp. 2d 1243 (W.D. Wash. 2011), to argue that Hanson cannot allege sufficient notice under the second element unless he "specifically notified Raytheon that he suspected fraud in association with the bidding process." Mot. at 13. *Sicilia* applies an out-of-circuit rule that employees "whose complaints fall within the scope of their job duties must provide their employers with clear notice of their intent to pursue an FCA action." *Id*. at 1254. This is unhelpful to this situation because *Sicilia* analyzes these issues at the summary judgment phase, references an out-of-circuit rule, and addresses claims made by an ethics compliance employee who "admits that it was his job 'to report those instances that [he] felt were endangering the company of falling out of compliance or were violating . . . whatever law or regulation [he was] working with.'" *Id*. at 1255. Even if this analysis were appropriate for this stage of the case, there is no suggestion at this point in the proceedings that Hanson held any such position or that his job duties specifically included reporting ethical violations. *Sicilia* is irrelevant to this case.

Hanson has adequately pled a prima facie case of FCA retaliation. Raytheon's motion to dismiss this claim is therefore DENIED.

         b. Claims Five, Six, and Nine: Administrative Exhaustion

Raytheon argues that Claims Five, Six, and Nine fail because Plaintiff has failed to allege that he exhausted his administrative remedies under the California Labor Code. Raytheon bases this argument on the California Supreme Court's opinion in *Campbell v. Regents of the Univ. of Calif.*, 35 Cal. 4th 311, 321 (2005). *Campbell* held that a University of California employee was required to exhaust her administrative remedies within the university system before filing civil suit. *Id*.

The California federal district courts are divided on the proper interpretation of *Campbell*. A larger number have found that *Campbell* requires plaintiffs bringing suit under §§ 1102.5 and 89.6 to exhaust their claims with the California Labor Commissioner under Labor Code § 98.7. *See, e.g., Miller v. Sw. Airlines, Co.,* 923 F. Supp. 2d 1206, 1210 (N.D. Cal. 2013); *Ferretti v. Pfizer, Inc.,* 855 F. Supp. 2d 1017,

Case 8:13-cv-00896-DOC-JPR   Document 27   Filed 01/14/14   Page 7 of 11   Page ID #:298

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0896 (JPRx)                                         Date: January 13, 2014
                                                                     Page 7

1024 (N.D. Cal. 2012) (district courts have "uniformly" held since *Campbell* that exhaustion to the Labor Commissioner is required under § 98.7; collecting cases).

A smaller number of federal district courts, however, disagree. These cases have noted that *Campbell*'s holding applies to *internal* administrative remedies and that § 98.7 uses permissive language to find that plaintiffs need not exhaust claims under §§ 1102.5 with the Labor Commissioner. *See, e.g., Dowell v. Contra Costa Cnty.*, 928 F. Supp. 2d 1137, 1153 (N.D. Cal. 2013); *Turner v. City & County of San Francisco,* 892 F. Supp. 2d 1188, 1200-03 (N.D. Cal. 2012); *Creighton v. City of Livingston,* 2009 WL 3246825, at *12 (E.D. Cal. Oct.7, 2009). These cases hold that administrative exhaustion is not required.

The Court finds the latter cases more persuasive. No published California decision holds that a plaintiff like Hanson must exhaust remedies under § 98.7. A recent California Court of Appeal decision reached this conclusion, but is unpublished. *See MacDonald v. State*, 161 Cal. Rptr. 3d 520, 526 (Ct. App. 2013). A published Court of Appeal decision holds the opposite. *See Lloyd v. Cnty. of Los Angeles*, 172 Cal. App. 4th 320, 331 (2009). The statutory language of § 98.7 is also permissive, stating that a plaintiff *may* present his or her claim to the Labor Commissioner before seeking an alternate remedy. *See Dowell*, 928 F. Supp. 2d at 1153; Cal. Lab. Code § 98.7 ("Any person who believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner may file a complaint with the division . . ."). The Court therefore finds that Hanson was not required to exhaust his remedies with the Labor Commissioner, and his allegations are therefore sufficient.

### c. Claim Seven: Wrongful Termination in Violation of Public Policy

Raytheon argues that, because Hanson has not sufficiently pleaded the elements of certain statutes upon which Claim Seven (wrongful termination in violation of public policy) relies, those statutes cannot provide a basis for that Claim. Raytheon moves to strike the portions of the complaint associated with these claims.

Although California generally follows an "at will" employment rule, the courts "have created a narrow exception to this rule by recognizing that an employer's right to discharge an at-will employee is subject to limits that fundamental public policy imposes." *Green v. Ralee Eng'g Co.*, 19 Cal.4th 66, 71 (1998); *see Tameny v. Atl.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0896 (JPRx)	Date: January 13, 2014
	Page 8

*Richfield Co.,* 27 Cal. 3d 167 (1980). The public policy implicated must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Freund v. Nycomed Amersham,* 347 F.3d 752, 758 (9th Cir. 2003) (quoting *City of Moorpark v. Super. Ct.,* 18 Cal.4th 1143, 1159 (1998)).

Raytheon argues that a plaintiff must sufficiently allege each element of a statutory claim in order to use that claim to support a claim for wrongful termination in violation of public policy, citing *Nordstrom v. U.S. Bank, N.A., Inc.*, 11-CV-1554 BEN KSC, 2012 WL 3000416 (S.D. Cal. July 23, 2012). Raytheon's argument follows that, because Plaintiff has not sufficiently alleged its retaliation claims or any claims under Labor Code § 227.3, Hanson cannot allege any claim for wrongful termination. Mot. at 19-20.

The Court is skeptical of Raytheon's position. *Stevenson v. Superior Court*, which provides the underlying language Raytheon uses, does not explicitly state the rule Raytheon advocates. *See Stevenson v. Superior Court*, 16 Cal.4th 880, 904-05 (1997). *Stevenson* held that an employee could bring a wrongful discharge tort claim based on FEHA without exhausting her remedies under FEHA, so long as FEHA actually applied to her employer:

> Stated more analytically and precisely, when a plaintiff relies upon a statutory prohibition to support a common law cause of action for wrongful termination in violation of public policy, the common law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition, but the common law claim is not subject to statutory procedural limitations affecting only the availability and scope of nonexclusive statutory remedies. Under the rule as thus stated, a common law tort claim for wrongful termination in violation of the public policy against age discrimination articulated in the FEHA is subject to the FEHA's exemption for small-scale employers because that exemption is a limitation affecting the nature and scope of the age discrimination prohibition. . . .
>
> By contrast, a common law tort claim . . . is not subject to the FEHA's requirement that an employee exhaust administrative remedies before seeking judicial relief because that requirement does not affect the nature

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0896 (JPRx)                              Date: January 13, 2014
                                                                                                      Page 9

> and scope of the prohibition but only the availability and scope of the
> statutory remedies. An employee's posttermination failure to exhaust
> administrative remedies has no bearing on whether the termination violated
> the public policy expressed through the statutory prohibition against age
> discrimination . . . .

*Stevenson*, 16 Cal. 4th at 904-05. This language does suggest that a wrongful tort claim cannot exceed the scope of what the statute intends. But this does not necessarily translate to a blanket statement that "all elements" of a statutory claim must be pleaded, particularly where procedural elements are explicitly exempted. Thus, all of the elements of a given claim that would be required for statutory relief may not be necessary, if the plaintiff sufficiently pleads a violation of the public policy underlying the statute and the other prerequisites for the wrongful termination tort.

       As already discussed, Hanson's claims under §§ 1102.5 and the FCA are sufficiently pleaded. Thus, even if the Court were to accept Raytheon's theory, those claims stand. Plaintiff also references Labor Code § 227.3 in his wrongful termination argument, but does so cursorily and without elaboration. The specific facts are unilluminating as to the substance of a § 227.3 claim – Hanson does not appear to ever state that he was discharged without payment of outstanding overtime. Without applying the *Nordstrom* requirement that Hanson plead all the elements of a § 227.3 claim, Hanson has simply failed to show any facts that would suggest a violation of a public policy articulated in § 227.3 that would satisfy a wrongful termination tort. It is not even clear from the complaint that Hanson had unpaid PTO to take, let alone that this provision of the Labor Code is otherwise capable of supporting the wrongful termination tort.

       Therefore, the Court GRANTS Raytheon's motion to strike as to page 30 of the FAC, lines 20-27, beginning "Vacation and paid time off . . ." and ending "violated this requirement."

            d. Claim Eight: Rosenthal Fair Debt Collection Practices Act

       Raytheon argues that Claim Eight insufficiently pleads that Raytheon violated California's fair debt collection law, the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788, *et seq*. Hanson appears to allege that Raytheon tried to collect money outstanding paid time off ("PTO") days he requested before his termination. Hanson apparently did not take those two days because they were scheduled

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0896 (JPRx)                                      Date: January 13, 2014
                                                                                                                               Page 10

after his termination. FAC ¶68-70. It appears from the FAC that Raytheon may have sent Hanson two letters about this issue. FAC ¶¶ 71-72. There is no further detail in the FAC.

The RFDCPA provides, in relevant part, that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of [the federal FDCPA, codified at 15 U.S.C.] Sections 1692b to 1692j, inclusive." *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1060 (C.D. Cal. 2009) (quoting Cal. Civ. Code § 1788.17). To plead a violation of the RFDCPA, Hanson must plead sufficient facts to show Raytheon is a "debt collector" under the statute. *Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1135 (N.D. Cal. 2009). The statute defines "debt collector" as:

> any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law.

Cal. Civ. Code § 1788.2.

The FAC pleads no facts suggesting Raytheon is a debt collector. Construed generously, the FAC states that Raytheon sent Hanson two letters about an alleged debt regarding PTO. These facts do not establish that Raytheon functioned as a debt collector under the statute, nor that Raytheon took any action prohibited by the statute. *See* Cal. Civ. Code §§ 1788.10-1788.10 (prohibiting debt collectors from using harassment, threats, obscene language, improper communication, and misrepresentations in the collections process).

Because the FAC recounts no facts that would support liability under the RFDCPA, the Court GRANTS Raytheon's motion to dismiss Claim Eight of the FAC.

       e.    Claim Nine: Violation of the California Labor Code

Hanson states a generic claim for violations of "The California Labor Code." Hanson states that this claim is based on Raytheon forcing employees to use PTO for normal work time when there is not an appropriate charge number available. It is impossible for Raytheon to defend against statutory claims it cannot identify, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0896 (JPRx)                          Date: January 13, 2014
                                                                                                                  Page 11

impossible for the Court to evaluate the sufficiency of the pleading without being able to identify the elements of the claimed violation.

       Defendant's motion is therefore GRANTED with respect to Claim Nine.

       f.    Leave to Amend

       Leave to amend is appropriate in this case. *See* Rule 15(a)(2); *Morongo Band of Mission Indians*, 893 F.2d at 1079. The Court therefore GRANTS leave to amend the complaint. The amended complaint is due on or before **January 27, 2014.**

IV. Disposition

- Raytheon's motion to dismiss Claim Four for failure to state a claim under the FCA is DENIED.

- Raytheon's motion to dismiss Claims Five, Six, and Nine for failure to exhaust administrative remedies is DENIED.

- Raytheon's motion to strike Claim Seven is GRANTED with respect to California Labor Code § 227.3.

- Raytheon's motion to dismiss Claim Eight for failure to plead a violation of the RFDCPA is GRANTED.

- Raytheon's motion to dismiss Claim Nine for failure to specify a specific section of the California Labor Code is GRANTED.

       Plaintiff must file an amended complaint on or before **January 27, 2014**.

MINUTES FORM 11
CIVIL-GEN                                                                                                           Initials of Deputy Clerk: jcb